UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12075-RGS

VIROUNA SIRASOMBATH

v.

WATERS CORP. and PAUL FERREIRA

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

June 24, 2015

STEARNS, D.J.

Plaintiff Virouna Sirasombath is suing her former employer, Waters Corporation, and her immediate supervisor, Paul Ferreira, alleging that they discriminated against her on the basis of her national origin (Laotian) in violation of state and federal law (Counts VII and VIII). She also alleges that both defendants retaliated against her for bringing the discrimination claim (Counts V and VI). Finally, Sirasombath asserts that Waters failed to pay her regular wages and overtime in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 151, § 1A (Count I), and ch. 149, §§ 148, 150 (Count II), and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 (Counts III and IV). Defendants move for summary judgment on all counts.

## BACKGROUND

The facts, viewed in the light most favorable to Sirasombath as the nonmoving party, are as follows. Sirasombath immigrated to the United States from Laos. Defs.' Stmt. of Facts (DSOF) ¶ 1. She began working at Waters in May of 2006 as a Bulk Synthesis Operator I. DSOF ¶ 2. Waters's Bulk Synthesis Department, which is located in Taunton, Massachusetts, manufactures chemicals. *Id.* ¶ 6. The Taunton facility is overseen by Ferreira. *Id.* ¶ 5. It has four work areas: the low volume laboratory where glassware reactions take place; suites 1 and 2 in which "large" reactors (ranging in capacity from 7 to 500 gallons) are located; and suite 3 where a "sizing" process is performed. *Id.* ¶ 7. Waters values employees with adaptable skills who "can move around and relocate" among the four processing areas. *Id.* ¶ 9.

Waters subscribes to a "pay for performance" compensation program that rewards employees for their versatility as well as their performance. *Id.* ¶¶ 13, 15. Salary increases are based on an employee's overall evaluation. *Id.* ¶ 18. Each year, shift leaders rank the floor operators based on performance level, skills, training, work ethic, and eagerness to learn and help others. *Id.* ¶¶ 20-21. The rankings are then submitted to a supervisor who, after

preparing a written performance review, decides whether or not to award the employee a salary increase. *Id.* ¶ 20.

Sirasombath was hired by Waters in 2006 at an hourly wage of $16.50. She alleges that over time her fellow operators' wages increased "well beyond" hers. Compl. ¶¶ 6-7. Waters has provided an undisputed wage history for the years 2006 to 2013 for the five employees (demarcated A through E and further identified by ethnicity) who began their employment at the same time as Sirasombath with a similar experience level. DSOF ¶ 25. In 2006, the starting hourly wages of the comparators were: $16.00 for A (White); $17.00 for B (White); $16.50 for C (White); $16.00 for D (White); $16.00 for E (African American); and $16.50 for Sirasombath (Asian). *Id.* In 2007, the respective wages were: $16.93 for A; $17.68 for B; $18.01 for C; $16.97 for D; $16.17 for E; and $17.01 for Sirasombath. *Id.* ¶ 27. In 2008, employees A through D were promoted to Synthesis Operator II at an increased hourly wage: $19.90 for A; $19.90 for B; $20.31 for C; $19.90 for D; while Sirasombath was paid $17.65 (E was paid $16.78). *Id.* ¶ 28. In 2009, there were no salary increases.[1] *Id.* ¶ 29. By 2010, all five employees (including E), but not Sirasombath, had been promoted to Synthesis

---

[1] The Waters's Board of Directors allocated funds for wage increases in 2006, 2007, 2010, and 2011, but not in 2008, 2009, 2012, and 2013. *Id.* ¶ 16.

Operator II. The wage allocations were: $20.84 for A; $20.26 for B; $20.90 for C; $20.88 for D; $18.74 for E; and $17.93 for Sirasombath. *Id.* ¶ 30. In 2011, Sirasombath was promoted to Synthesis Operator II. The wages for that year were: $21.56 for A; $20.62 for B; $20.90 for C; $23.12 for D; $20.43 for E; and $19.04 for Sirasombath. *Id.* ¶ 31. In 2012, the wages were: $22.26 for A; $21.14 for B; $22.07 for C; $24.04 for D (who had been promoted to section leader); $20.99 for E; and $19.94 for Sirasombath. *Id.* ¶ 32. Finally, in 2013, the wages were: $22.59 for A; $21.46 for B; $22.07 for C; $24.88 for D; $22.36 for E; and $19.94 for Sirasombath. *Id.* ¶ 33.

Sirasombath also alleges that she was "deprived" of overtime and received "far less" in overtime hours than other employees. Compl. ¶ 16. The total number of overtime hours for all employees at Waters was 5,561.5 in 2010, 4,273.5 in 2011, 2,552.5 in 2012, and 3,073 in 2013. DSOF ¶ 57. Sirasombath worked 123.75 hours of overtime in 2010, 95.25 hours in 2011, 65.75 hours in 2012, and 70 hours in 2013. Susan Bird Aff., Ex. Q. Between February and June of 2012, Sirasombath worked eight days of overtime, and between July and December of 2012, seven days of overtime. *Id.* ¶ 58. From January 1 to August 31, 2013, Sirasombath worked fifteen days of overtime. *Id.* ¶ 59.

Ferreira, in evaluating Sirasombath's performance, noted that while she was a "good operator" when it came to low volume glassware processing, she needed to gain experience operating large scale reactors. *Id.* ¶¶ 8, 34, 37. In 2010, Sirasombath's performance review encouraged her to "[l]earn [to] operate the different pieces of equipment for implementing reactions, filtrations, and drying at the large and glassware-scale." Joan Ackerstein Aff., Ex. M. Ferreira repeated his urgings in 2011 and 2012 that Sirasombath develop more flexible skills. DSOF ¶¶ 38-39. In November of 2012, Sirasombath complained to Human Resources Manager Susan Bird about her wages and dearth of overtime. *Id.* ¶ 50. Bird suggested that Sirasombath seek opportunities to work in the large scale reactor area to enlarge her skill set. *Id.* ¶ 51.

On March 7, 2013, Sirasombath was assigned to work with a large scale 300-gallon reactor. *Id.* ¶ 61-63. She was responsible for "charging" the reactor with ammonium hydroxide. *Id.* ¶ 66. After successfully charging the reactor twice, the vacuum pump attached to the drum of ammonium malfunctioned. *Id.* ¶ 67. Sirasombath alerted her section leader, Manuel Pereira, and repaired the pump. *Id.* ¶ 68. At Pereira's suggestion, Sirasombath removed her respirator to better read the floor scale. *Id.* ¶ 69. As she did so, she inhaled ammonium vapor. *Id.* Sirasombath subsequently

sought medical treatment at the Landmark Medical Center in Woonsocket, Rhode Island. *Id.* ¶¶ 71, 73. In September of 2013, as a result of the chemical exposure, Sirasombath took medical leave complaining of a memory impairment. *Id.* ¶ 72. In March of 2014, after being told by her healthcare provider that Sirasombath could no longer work in a chemical manufacturing environment, Waters terminated her. *Id.* ¶ 3.

Prior to bringing this lawsuit, Sirasombath filed a charge against Waters with the Massachusetts Commission Against Discrimination (MCAD) and the federal Equal Employment Opportunity Commission (EEOC). In the charge, which she filed on May 9, 2012, Sirasombath alleged that she had been discriminated against on the basis of race, national origin, age, and gender. The EEOC dismissed the charge on June 19, 2012, and issued Sirasombath a right to sue notice. Bird Aff., Exs. A, B. On January 18, 2013, Sirasombath filed a second charge against Waters alleging retaliation. The EEOC dismissed the charge on May 30, 2013. Bird Aff., Exs. C, D. The instant Complaint was filed in the federal district court on August 27, 2013.

# DISCUSSION

## *Summary Judgment Standard*

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). Although all reasonable inferences are drawn in the nonmovant's favor, the court cannot "'draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014), quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

***Disparate Treatment Claims***

*A. Limitations*

Under Title VII, a plaintiff is not permitted to bring suit in federal court until she receives a right to sue notice. 42 U.S.C. § 2000(e). Once the notice is received, she has ninety days in which to file. *Id.* Sirasombath's federal Title VII claim (Count VIII), alleging discrimination based on national origin, is clearly time-barred. Sirasombath filed her initial charge with the MCAD on May 9, 2012. Bird Aff., Ex. A. On June 19, 2012, the EEOC issued the right to sue notice. Sirasombath did not, however, file the Complaint in federal court until August 27, 2013, almost a year after the ninety-day limitations period expired. *See Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 142 (1st Cir. 2012) ("If the claimant does not bring suit within the prescribed 90-day period, the action is time-barred.").[2]

---

[2] Sirasombath contends that while her national origin discrimination claim was not explicitly set out in her second MCAD charge (alleging retaliation), "it is based on the acts of discrimination that the Administrative investigation could reasonably have been expected to uncover." Pl.'s Opp'n Mem. at 7. However, retaliation and discrimination based on national origin are distinct and separate theories of discrimination. *See Noviello v. City of Boston*, 398 F.3d 76, 87 (1st Cir. 2005) ("Most often, retaliation is a distinct and independent act of discrimination, motivated by a discrete intention to punish a person who has rocked the boat by complaining about an unlawful employment practice.").

Under Mass. Gen. Laws ch. 151B § 5, a charge of discrimination must be filed with the MCAD within three hundred days of the last alleged discriminatory act. A plaintiff has three years "after the alleged unlawful practice occurred" to bring suit. *Id.* § 9. Sirasombath filed her charge with the MCAD on May 9, 2012, alleging that the "earliest" act of discrimination occurred on March 1, 2011. Bird Aff., Ex. A. Defendants argue that any claims prior to July 13, 2011 (300 days before the filing), are barred by § 5, and that claims alleged to have occurred prior to August 13, 2010 are barred by § 9.

This argument overlooks the potential applicability of the continuing violation doctrine. As an exception to the statute of limitations, the "continuing violation doctrine . . . permit[s] plaintiffs to seek damages, if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the . . . limitations period to anchor the earlier claims." *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001). "Although the limitations clock generally starts with the commission of a discriminatory act, a true 'continuing violation' rewinds the clock for each discriminatory episode along the way." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183 (1st Cir. 1989). To qualify as "anchoring," the discriminatory act must "substantially . . . [relate] to earlier incidents of

abuse." *Id.*, quoting *Cuddyer*, 434 Mass. at 533. Sirasombath has identified two anchoring acts that work to toll the statute of limitations, namely, being paid less than her fellow operators in 2011 and 2013. Compl. ¶¶ 7-12; s*ee Andujar v. Nortel Networks, Inc.,* 400 F. Supp. 2d 306, 330 (D. Mass. 2005) ("Each paycheck is a separate event in an unequal pay claim, with the statute beginning to run on that date."). In other words, her Chapter 151B claim survives the statute of limitations bar.

*B. Merits*

Where a plaintiff, as is the case here, is unable to offer direct evidence of discrimination, a district court at summary judgment applies the burden-shifting analysis formulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See also Lipchitz v. Raytheon Co.*, 434 Mass. 493, 508 (2001). Under the *McDonnell-Douglas* framework, once a plaintiff has successfully established a threshold prima facie case of discrimination, a presumption of discrimination arises. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action taken against the employee. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253-255. If the employer produces evidence that the adverse employment action was taken for a nondiscriminatory reason

10

(whether persuasive or not), the *McDonnell-Douglas* presumption disappears from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). The burden of production then shifts back to the plaintiff, who must "introduce sufficient evidence to support two additional findings: (1) that the employer's articulated reason for the job action is a pretext, and (2) that the true reason is discriminatory. The plaintiff may rely on the same evidence to prove both pretext and discrimination, but the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir. 1994) (citations omitted); *see also Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 117-118 (2000).

To establish a prima facie case of disparate treatment based on national origin, Sirasombath must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) her employer took an adverse employment action against her; and (4) there is evidence of a causal connection between her membership in the protected class and the adverse employment action. *See Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011).

Sirasombath sufficiently pleads a prima facie case of disparate treatment against Waters.[3] She alleges that she was discriminated against because of being Laotian and that her "salary did not increase as quickly . . .

---

[3] Chapter 151B regulations require that a charge of discrimination include "appropriate identification of the . . . person(s) alleged to have committed unlawful discriminatory acts." 804 Code Mass. Regs. § 1.10(5)(d). Here, Sirasombath failed to name Ferreira in either of her Chapter 151B charges. While it is true that the failure to name a defendant can be excused if "that potential party was put on notice by the relation of its conduct to the conduct of the party actually named in an MCAD complaint," *Quarterman v. City of Springfield*, 716 F. Supp. 2d 67, 77-78 (D. Mass. 2009), Sirasombath has failed to offer any evidence that knowledge possessed by Waters can be fairly attributed to Ferreira (a relatively low-level supervisor). *See Chatman v. Gentle Dental Ctr. of Waltham*, 973 F. Supp. 228, 236 (D. Mass. 1997) ("Because the complaint here does not allege that the individual defendants had notice of the MCAD Charge and an opportunity to conciliate it and because notice and an opportunity to conciliate cannot be reasonably inferred from allegations in the complaint, the claims asserted . . . are dismissed as to the individual defendants."). While a *pro se* administrative charge will be liberally construed, *see Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996), the policy of liberal construction will not be invoked at the expense of a third-party's rights. As *Lattimore* itself notes, "*pro se* status does not relieve an employee of the obligation to meet procedural requirements established by law." *Id.* Because there is no evidence that Ferreira was on notice of the charge, the claim of national origin discrimination against him fails. *See Powers v. H.B. Smith Co.*, 42 Mass. App. Ct. 657, 667 (1997) (finding that "[t]here was no error" when "[t]he motion judge concluded that, since the plaintiff did not name Mestek in his MCAD complaint, his claim against Mestek was barred").

because she is Asian American."[4] Compl. ¶ 15. She also alleges that Waters "made a conscious effort to keep her salary depressed."[5] *Id.*

For its part, Waters has articulated a legitimate, nondiscriminatory reason for the differential over time in wages between Sirasombath and her cohorts, namely, inferior job performance. As Waters points out, Sirasombath scored the lowest combined rating of those in her cohort on the performance reviews. Waters's Mem. at 8. It is also, according to Waters, because she did not develop the same range of skills as her comparators, particularly in operating large reactors. DSOF ¶¶ 37-38. Consequently, she was the last of her cohort to be promoted to Synthesis Operator II, which

---

[4] Sirasombath earned approximately $2.00 less per hour than her Caucasian counterparts in 2008, 2010, 2012, and 2013. DSOF ¶¶ 28, 30, 32, 33. In 2011, she was making a little over $1.00 less per hour than her Caucasian counterparts. *Id.* ¶ 31.

[5] Sirasombath alleges in her federal complaint that she was also "deprived" of overtime opportunities. Compl. ¶ 16. However, in her original MCAD charge, she did not allege that she was denied overtime based on her national origin; she merely stated that she was "lagging behind in terms of promotions, merit increases, recognition and awards." Bird Aff., Ex. A. *See Windross v. Village Automotive Grp., Inc.*, 71 Mass. App. Ct. 861, 864 (2008) (The purposes of Chapter 151B "would be frustrated if the claimant were permitted to allege one thing in the MCAD complaint only to allege something entirely different in the ensuing civil action."). It was not until the filing of her second MCAD charge (for retaliation) that she raised the issue of overtime. She is therefore precluded from alleging a denial of overtime based on national origin. *See Abramian*, 432 Mass. at 121 ("Retaliation is a separate and independent cause of action.").

caused her wages to lag behind her coworkers who were promoted earlier. DSOF ¶¶ 30-33.

Sirasombath has failed to come forward with any evidence to counter Waters's articulated nondiscriminatory explanation of the wage differentials. It is not an act of discrimination for an employer to set objective expectations for employee performance and to reward more fulsomely those employees who meet or exceed those expectations. This is especially true in the absence of any evidence that a plaintiff was denied the opportunity to gain the training and experience that would have kept her on the same footing as her coworkers. Nor is there any evidence that Sirasombath's Laotian heritage figured into any of Waters's decisions with respect to her employment. In other words, Sirasombath has failed to provide a basis on which a reasonable fact finder could conclude that Waters's explanation is a pretext for intentional discrimination. *See Quinones v. Buick*, 436 F.3d 284, 289-90 (1st Cir. 2006), quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 62 (1st Cir. 1999) ("[T]he plaintiff 'must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was discrimination.'"); *see also Lipchitz*, 434 Mass. at 504 (the jury should be

instructed that the plaintiff must prove that discriminatory intent was *the* determinative cause of the adverse employment action).

### *Retaliation Claims*

To make out a prima facie case of retaliation under Title VII or Chapter 151B, Sirasombath must show that: (1) she engaged in a protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity. *See Prescott v. Higgins*, 538 F.3d 32, 43 (1st Cir. 2008); *see also Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004).[6] "The alleged retaliatory action must be material, producing a significant, not trivial, harm." *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006) (internal citations omitted). The retaliatory act "must materially change the conditions of plaintiff['s] employ[ment]." *Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002). "Materially adverse" means the action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), quoting

---

[6] Sirasombath's federal and state claims (Count V and VI) alleging retaliation are not time-barred. After she filed her second charge with the MCAD on January 18, 2013, the EEOC dismissed the claim and issued the right to sue notice on May 30, 2013. Sirasombath then filed this Complaint in the federal district court on August 27, 2013 (within the allowed ninety days).

*Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). The test for whether an adverse action is material or produces significant harm is "objective." *Burlington N.,* 548 U.S. at 68-69.

Sirasombath alleges two specific retaliatory acts: (1) being "forced" to work in the large scale reactor room by Ferreira, and (2) being denied overtime after June 19, 2012 (the date of the dismissal of her first MCAD charge).[7] Bird Aff., Ex. C. As for the first alleged act of retaliation, Sirasombath alleges that heavy reactors are not only more difficult for her because of her small stature but also "more dangerous," as evidenced by her accident on March 7, 2013. Pl.'s Stmt. of Facts (PSOF) ¶ 34; Compl. ¶ 34. This may be true, but assigning an employee to do work that falls within the ordinary scope of her employment and is expected of all employees (Sirasombath's co-workers testified to spending half of their job time working with large reactors, DSOF ¶¶ 36, 40, 41), cannot as a matter of law constitute a material act of retaliation.[8]

---

[7] Because Sirasombath failed to name Ferreira in her MCAD retaliation charge, the claim against Ferreira must be dismissed. S*ee Preston v. Second Wind, Inc.*, 824 F. Supp. 2d 247, 251 (D. Mass. 2011); *see also* fn. 3, *supra*.

[8] It is undisputed that Sirasombath had been trained to work with large reactors and had been assigned previously to the large reactor floor. PSOF ¶ 61.

The same is true of Sirasombath's claim that she was denied overtime opportunities.[9] Sirasombath's own evidence established that she worked only one less day of overtime during the relevant period (seven days between July and December of 2012 as opposed to eight days between February and June of 2012) following the dismissal of her first EEOC charge in June of 2012. From January to August of 2013, she worked fifteen days of overtime.

### *Wage and Overtime Claims*

In Counts I-IV, Sirasombath alleges that Waters "failed to pay" her overtime and regular wages in violation of Mass. Gen. Laws ch. 151, § 1A and ch. 149, §§ 148, 150, and also in violation of the FLSA (29 U.S.C. § 201). Compl. ¶¶ 28, 32, 36, 40. The FLSA requires employers to pay employees a minimum hourly wage and overtime compensation for work in excess of forty hours per week. *See* 29 U.S.C. §§ 206, 207. The Massachusetts Wage Act, Gen. Laws ch. 149, § 148, similarly guarantees employees the right to recover unpaid earned wages from their employer.[10] The same analysis

---

[9] Sirasombath also alleges that her name was "crossed off the overtime designation lists," PSOF ¶ 53, but fails to provide any evidence to support the allegation. Nor do her facts bear it out.

[10] Sirasombath's claims against Ferreira with respect to wage and overtime payments are not actionable because neither state nor federal law imposes individual liability on lower level company officials and supervisors for the withholding of wages. *See* Mass. Gen. Laws ch. 149, § 148; 29 U.S.C § 203(d); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013), quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)

applies to the federal and state statutes. *See Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 686-687 (1st Cir. 2007) ("The resolution of Cash's Fair Labor Standards Act claim determines his Massachusetts statutory claim."); *see also Swift v. AutoZone, Inc.*, 441 Mass. 443, 447 (2004) ("[T]he overtime provisions under State law were intended to be 'essentially identical' to Federal law . . . .") (internal citation omitted).

Sirasombath's claims fail for the simple reason that she was paid for all the hours she worked, including her overtime hours. DSOF ¶ 52. She is not claiming nonpayment of wages, she just feels that she should have been paid more. This feeling is not an issue that the federal or state statute is intended to assuage.

## ORDER

For the foregoing reasons, defendants' motions for summary judgment are <u>ALLOWED</u>. The Clerk will enter judgment for defendants on all counts and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

("'[A] corporate officer with operational control of a corporation's covered enterprise is an employer . . .'" held accountable for nonpayment of wages.).